Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| J & H CASTAING, INC.<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO; OFICINA DE GERENCIA DE PERMISOS; DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE OGPE; JUNTA DE PLANIFICACIÓN DE PUERTO RICO; FORTECH BANK INTERNATIONAL (antes RL Capital Investment LLC); SULAIMAN GAS CORP.; ING. JORGE L. BONNIN<br><br>Recurridos | TA2026RA00133 | Revisión administrativa procedente de la Oficina de Gerencia de Permisos (OGPE)<br><br>Revisión administrativa núm.: 2026-676353-SDR-304006<br><br>Sobre: Permiso de Construcción 2021-394662-PCOC-027533 |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2026.

Por la vía ministerial, la Oficina de Gerencia de Permisos (la "OGPe") aprobó un permiso de construcción en conexión con trabajos en la marquesina y el edificio principal de lo que fue (y se pretende sea de nuevo) una estación de gasolina. Según se explica en detalle a continuación, concluimos que erró OGPe al utilizar la vía ministerial para aprobar el permiso, pues el uso anteriormente autorizado fue abandonado por más de dos años, por lo que la agencia tenía que evaluar la solicitud como una nueva.

I.

Antes del inicio de los trámites de referencia, las partes estuvieron involucradas en una acción civil sobre asuntos

relacionados.  En efecto, la parte aquí recurrente, J & H Castaing, Inc. (la "Interventora"), presentó un recurso de interdicto preliminar[1] en marzo de 2021, ante el Tribunal de Primera Instancia ("TPI"), contra RL Capital International LLC.

En este recurso se señaló que el demandado inició una construcción en la estación de gasolina objeto del trámite administrativo de referencia (ubicada en la Carretera 165, Km. 10.3 del Barrio Contorno en el Municipio de Toa Alta).  Se alegó que no se habían obtenido los permisos requeridos.  Además, la Interventora sostuvo que la estación de gasolina no cumplía con varias de las disposiciones del Reglamento Conjunto para la Evaluación y Expedición de Permiso Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento 9233 de 2 de diciembre de 2020.

Por ejemplo, señaló que la estación: 1) llevaba más de 2 años en desuso, por lo que procedía que se evaluara el otorgamiento del permiso sobre la base de los criterios de una nueva gasolinera; 2) estaba ubicada a menos de 800 metros lineales de otra gasolinera; 3) no contaba con el muro de separación requerido cuando una gasolinera está ubicada en un lote residencial; 4) y que el patio lateral y posterior no cumplían con las medidas requeridas.  Solicitó la paralización de los trabajos de construcción o remodelación de la estación de gasolina.

RL Capital presentó una *Moción de Desestimación* [2] en la que planteó que: 1) procedía la desestimación debido a que el inmueble no estaba operando; y 2) no se estaba solicitando la continuación, en ese momento, de las operaciones de negocio ni la transferencia del permiso de uso.  A su vez, también sostuvo que la parte adversa

---

[1] *J & H Castaign Inc. v. RL Capital International, LLC & Otros*, BY2021CV01056, Entrada [1] Sistema Unificado de Manejo y Administración de Casos ("SUMAC").
[2] J & H Castaign Inc. v. RL Capital International, LLC & Otros, BY2021CV01056, Entrada [15], SUMAC.

no tenía un interés propietario o personal afectado y que las obras llevadas a cabo estaban exentas de la solicitud de permisos.

A raíz de una transacción entre las partes, el TPI dictó *Sentencia*[3]. RL Capital se comprometió a detener toda obra en el inmueble, salvo terminar de colocar los cristales en la propiedad, y también a informarle al futuro comprador que debía cumplir con los permisos correspondientes para el uso que vaya a dársele al inmueble.

Posteriormente, en julio de 2022, Sulaiman Gas Corp.[4] presentó una solicitud de permiso[5] de construcción ante la OGPe para una estación de gasolina.

Al advenir en conocimiento de la solicitud del permiso, el 13 de enero de 2023, la Interventora solicitó permiso para participar de los procedimientos administrativos[6]. El 18 de enero, la OGPe, por medio de una *Resolución,* permitió la intervención y, además, denegó la solicitud del permiso de construcción.

Inconforme, el 6 de febrero Fortech Bank International, Inc. (el "Proponente")[7] y Sulaiman presentaron un *Recurso de Revisión de Celebración de Vista ante la División de Revisiones*[8]. En lo pertinente, arguyeron que el permiso de uso de la estación de gasolina no había sido revocado, por lo que continuaba vigente. También sostuvieron que no aplicaba el Artículo 9.6 de la Ley 161-2009, conocida como Ley para la Reforma del Proceso de Puerto Rico (23 LPRA sec.9019e) porque el cese de operación de la

---

[3] J & H Castaign Inc. v. RL Capital International, LLC & Otros, BY2021CV01056, Entrada [23] SUMAC.
[4] Surge del expediente que Sulaiman adquirió un contrato de arrendamiento con la entidad RL Capital sobre la estación de gasolina.
[5] Entrada [1], *Resolución de Revisión Administrativa*, Exhibit 19, Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones ("SUMAC-TA").
[6] Entrada [1], *Resolución sobre Solicitud de Intervención*, Exhibit 7, SUMAC-TA.
[7] Entidad antes conocida como RL Capital.
[8] Entrada [1], *Recurso de Revisión de Celebración de Vista ante la División de Revisiones*, Exhibit 8, SUMAC-TA.

gasolinera no había sido "voluntario". Por su parte, la Interventora presentó un escrito en oposición.

Luego de varios trámites, la división apelativa de OGPe, mediante una Resolución de 15 de diciembre,[9] determinó que procedía devolver el caso a la OGPe para que evaluara nuevamente la solicitud de permiso bajo el Reglamento Conjunto para la Evaluación y Expedición de Permiso Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9473 de 16 de junio de 2023. La referida división consignó lo siguiente, en cuanto al trámite administrativo hasta ese momento:

1. [...]

2. La propiedad está localizada en el Km.Hm 10.3 Carr. 165, Calle Muñoz Rivera, Bo Contorno, en el Municipio de Toa Alta.

3. La propiedad ubica en un distrito calificado Comercial Intermedio (C-I), según el Mapa de Calificación de Suelos del Municipio de Toa Alta.

4. En el Memorial Explicativo que obra en el expediente del caso número 2021-394662-PCOC-027533, se indicó:

   "Sulaiman Gas Corp. (SGC) representada por Ched Slaimen Hanna tiene un Contrato de Arrendamiento con Fortech Bank International, Inc. antes RL Capital International, LLC de una Propiedad con el Uso de Estación de Gasolina ubicada en la carretera PR-185, Km. 10.3 en el barrio Contomos del Municipio de Toa Alta la cual adquirieron por Adjudicación o Venta Judicial.
   En la estación de gasolina existe una marquesina con dos (2) surtidores para el expendio de gasolina y un Edificio Principal usado como Tienda de Conveniencia con Caseta de Cobro.
   SGC se propone Remplazar la Marquesina existente que fue afectada estructuralmente por el Huracán María y conectarla al Edificio Principal. En adici[ó]n se van [a] hacer mejoras al Edificio Principal en el área de tienda, servicios sanitarios y caseta de cobro.

5. El 23 de octubre de 2023, la OGPe determinó denegar la solicitud de permiso de construcción objeto de revisión, y notificó la Resolución sobre Permiso de Construcción ese mismo día. En la Resolución se indicó lo siguiente:

---

[9] Entrada [1], *Resolución de Revisión Administrativa*, Exhibit 19, SUMAC-TA.

"[...] Conclusiones de Derecho La Ley 161-2009, según enmendada, conocida como "Ley para la Reforma del Proceso de Permisos de Puerto Rico", creó un nuevo sistema de permisos. Esta nueva ley deroga la Ley núm. 76 del 1975, según enmendada, conocida como "Ley Orgánica de la Administración de Reglamentos y Permisos". De conformidad con la Ley 161-2009, supra, fue adoptado el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios ("Reglamento Conjunto 2020") con vigencia de 2 de enero de 2021. [...] Evaluadas las Determinaciones de Hecho y las Conclusiones de Derecho previamente establecidas, en la presente propuesta:

- La Parte Proponente no ha cumplido con los requerimientos realizados en subsanación de 4 de agosto de 2023, y no solicitó prórroga para completar los mismos, según dispone el Reglamento Conjunto 2020.
- La Parte Proponente no recurrió ante la División de Revisiones Administrativas por estar en desacuerdo con requerimientos solicitados mediante subsanación del 4 de agosto de 2023. Por lo cual se tiene que aplicar lo discutido relacionado a los Artículos 8.11 y 11.10 de la Ley 161-2009, supra. Esto implica que, por tratarse de un caso certificado, la OGPe tiene la obligación legal de adjudicar la solicitud con los documentos que obran en el expediente.

Esta solicitud ha sido examinada y analizada por la OGPe, a base de la totalidad del expediente administrativo, a la luz de la información suministrada por la parte proponente, las disposiciones de leyes, reglamentos y normas de planificación vigentes.

DETERMINACIÓN Y TÉRMINOS DE REVISIÓN

Por la presente, tomando en consideración lo anteriormente expuesto y en virtud de las facultades conferidas mediante leyes, reglamentos y órdenes administrativas vigentes, el Secretario Auxiliar de la Oficina de Gerencia de Permisos, DENIEGA la solicitud de Permiso de Construcción sometida para el Caso Número 2021-394662-PCOC-027533, a tenor con lo dispuesto en el Artículo 8.4 Evaluación de las solicitudes de permisos y recomendaciones. (23 L.P.R.A. S 9018c) de la Ley 161-2009, según enmendada, toda vez que no cumple con disposiciones de la Ley 218-2008, según enmendada, Ley 161-2009, supra y Ley 107-2020, ni con disposiciones de la Regla 3.7.3 del Reglamento Conjunto 2020".

6. Inconforme con dicha determinación, el 13 de noviembre de 2023, la parte Recurrente presentó la solicitud de revisión administrativa de referencia […].

7. La solicitud de revisión administrativa fue acogida por esta División mediante Notificación Acogiendo Solicitud de Revisión Administrativa emitida el día 28 de noviembre de 2023.

Luego de varios incidentes procesales, el 30 de enero de 2026, la OGPe emitió el Permiso de Construcción número 2021-394662-PCOC-027533 ("Permiso de Construcción"). Este fue notificado a las partes por correo electrónico el 4 de febrero.

En desacuerdo con el otorgamiento del Permiso de Construcción, el 24 de febrero, la Interventora incoó un *Recurso de Revisión* en la División de Revisiones Administrativas de la OGPe. Sostuvo que: 1) el permiso de construcción fue emitido sin que la OGPe cumpliera con la Resolución y orden del 15 de diciembre de 2023 de la División de Revisiones Administrativas, la cual requería que la evaluación del permiso se realizara conforme a los parámetros del Reglamento Conjunto de 2023; 2) hubo una interrupción en el uso de la estación de gasolina, por lo que el permiso de uso dejó de ser válido; 3) para todos los efectos, el inmueble constituye una nueva gasolinera y debe solicitar los permisos de conformidad con los requisitos de la sección 8.8 del Reglamento Conjunto 2023; 4) no cumplió con varios de los requisitos estructurales establecidos en el Reglamento Conjunto de 2023.

El 10 de marzo, la OGPe determinó "No Acoger"[10] el recurso, ello bajo el fundamento de que el Juez Administrativo se inhibía de tomar cualquier determinación en el asunto por haber intervenido como Secretario Auxiliar en etapas previas del proceso. No se explicó por qué el asunto no podía haber sido atendido por otro funcionario.

---

[10] Entrada [1], *Notificación No Acogiendo Solicitud de Revisión Administrativa*, Exhibit 1, SUMAC-TA

Así las cosas, el 26 de marzo, la parte Interventora presentó el recurso que nos ocupa; formula los siguientes señalamientos de error:

> Erró la OGPe al emitir el permiso notificado el 4 de febrero de 2026 sin cumplir con lo ordenado por la División de Revisiones Administrativas del 15 de diciembre de 2023.

> Erró la OGPe al emitir el permiso de construcción notificado el 4 de febrero de 2026, a pesar de que los fundamentos para denegar el mismo no cambiaron con la aprobación del Reglamento Conjunto 2023.

> Erró la OGPe al emitir el permiso de construcción notificado el 4 de febrero de 2026 ya que el inmueble no cumple con varios de los parámetros establecidos en el Reglamento Conjunto 2023, el cual no permite variaciones a los parámetros en casos relacionados a estaciones para la venta de gasolina.

La OGPe y la Proponente presentaron sus alegatos en oposición[11]. Arguyen que el Permiso de Construcción podía válidamente emitirse por la vía ministerial. Plantean que, aunque la gasolinera no operó por más de dos años, ello fue por causas no atribuibles a los dueños del inmueble[12]. Señalan que no se modificó o alteró la estructura para un uso distinto, y que el término "uso", según se considera en la Ley 161, no se refiere a la utilización del negocio sino al propósito de este. Por tanto, sostienen que no hubo una interrupción en el uso según lo define la Ley 161-2009. Resolvemos[13].

II.

El Artículo 4.002 de la Ley 201-2003, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 LPRA sec. 24u, dispone que el Tribunal de Apelaciones tendrá jurisdicción para

---

[11] El 27 de abril, RL Investments, LLC, solicitó sustituir a la Proponente, pues es su sucesora en derecho en cuanto al asunto objeto de este caso. Hemos determinado autorizar la referida sustitución. Además, en conexión con las mociones presentadas el 14 y el 28 de abril de 2026 (SUMAC 3 y 10), se autoriza la solicitud de renuncia del Lcdo. Joarick Padilla Avilés.

[12] Entre las causas mencionadas están desavenencias económicas del dueño original, el Huracán María y un extenso litigio que dio como resultado que RL Capital, conocido también como Fortech y ahora RL Investments, LLC, adquiriera el predio el 2 de diciembre de 2019.

[13] El 27 de abril, la Interventora solicitó autorización para presentar una réplica y que se celebrase una vista oral. Hemos determinado denegar ambas solicitudes.

revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas". De igual modo, el Artículo 4.006 de la Ley 201-2003, 4 LPRA sec. 24y, establece la revisión judicial "de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas".

Por su parte, en lo referente al alcance de la revisión judicial de las determinaciones de las agencias administrativas, la Sección 4.5 de la Ley Núm. 38-2017 ("LPAU"), 3 LPRA sec. 9675, establece lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

Así pues, la revisión judicial de una decisión administrativa se ciñe a analizar: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. *Katiria's Café, Inc. v. Mun. Aut. de San Juan*, 2025 TSPR 33 a la pág. 11, 215 DPR __ (2025), citando a *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012). Por su parte, en cuanto a las conclusiones de derecho, los tribunales apelativos tienen la facultad de revisarlas en todos sus aspectos. *Vázquez, et al v. DACo.*, 2025 TSPR 56 a la pág. 31, 215 DPR ___ (2025); Véase, además, Sec. 4.5 de la LPAU, *supra*.

La deferencia a la determinación de una agencia administrativa cede cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las

leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *Jusino Rodríguez v. Junta de Retiro*, 2024 TSPR 138 a la pág. 7, 215 DPR __ (2024) (Citas omitidas).

Destacamos que la evidencia sustancial se define como la "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953). A su vez, se desprende de la sección precitada que el expediente administrativo constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la subsiguiente revisión judicial. Véase, además, Sección 3.18 de la LPAU, 3 LPRA sec. 9658; *Graciani Rodríguez*, 202 DPR a la pág. 128.

III.

La Ley Núm. 73 de 23 de junio de 1978 conocida como la "Ley para Regular la Industria de la Gasolina" ("Ley 73") fue promulgada con la intención de reconocer el alto interés público que ostenta la industria de la gasolina. Como parte de los propósitos de la ley el artículo 3, en su inciso (d), dispone que:

> […]la construcción y establecimiento de estaciones de servicio de venta al detal de gasolina y/o combustibles especiales se llev[ará] a cabo dentro de estrictos criterios de planificación integral, de forma que se mantenga un adecuado balance que evite en todo momento su proliferación irrazonable en los distintos mercados geográficos. 23 LPRA sec.1132.

Asimismo, la Ley 73 dispone que Oficina de Gerencia de Permisos deberá requerir que:

[...] toda consulta de ubicación o permiso de construcción o de uso para el establecimiento de una estación de servicio de venta al detal de gasolina, venga acompañada de un estudio de viabilidad que demuestre la necesidad y conveniencia del establecimiento de la misma, independientemente de que esté envuelta un área zonificada o no zonificada o de la clasificación de zonificación que le pueda corresponder.   23 LPRA sec.1133

IV.

Según la Exposición de Motivos de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, según enmendada ("Ley 161"), 23 LPRA secs. 9011, esta tiene el propósito de reglamentar la solicitud, evaluación, concesión y denegación de permisos de uso y de construcción y desarrollo de terrenos. Exposición de Motivos de la Ley Núm. 161–2009.  Para lograr esta encomienda, se creó la OGPe, entidad encargada de la evaluación, concesión o denegación de determinaciones finales y permisos relacionados con el desarrollo y el uso de terrenos, así como de las consultas de ubicación que incidan de alguna manera en la operación de un negocio en Puerto Rico.  23 LPRA sec. 9012d.

Al evaluar y adjudicar una solicitud de permiso, la OGPe debe establecer en primera instancia cuál es la naturaleza del trámite ante su consideración, entiéndase si está ante una solicitud de carácter ministerial o discrecional.  La Ley 161, en su artículo 1.5, inciso (48), describe el carácter ministerial como:

[...]una determinación que no conlleva juicio subjetivo por parte de un funcionario público o Profesional Autorizado sobre la forma en que se conduce o propone una actividad o acción.  El funcionario o Profesional Autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos presentados, pero no utiliza ninguna discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas.  [...] 23 LPRA sec. 9011.

Por su parte, el mismo artículo, en su inciso 26, establece que será discrecional toda aquella determinación que:

[...] conlleva [un] juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio

Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Éstos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas. Íd.

Una de las diferencias fundamentales entre ambos criterios radica en la obligación de exponer determinaciones de hecho y conclusiones de derecho. Según surge de la Ley 161, en su Artículo 8.7:

[e]n las solicitudes discrecionales, la [OGPe] emitirá todas sus determinaciones finales por escrito e incluirá y expondrá en ellas, separadamente, las determinaciones de hecho y conclusiones de derecho que fundamentan su determinación. En el caso de las solicitudes ministeriales, la [OGPe] incluirá en el expediente una evaluación de los parámetros aplicables conforme a las leyes y reglamentos vigentes que utilizó para realizar las mismas. Dicha evaluación no requerirá determinaciones de hechos ni conclusiones de derecho. [...] (23 LPRA sec. 9018).

Por su parte, el Reglamento Conjunto 2023, respecto a los asuntos ministeriales, en su sección 2.2.1.3, establece que, para su evaluación, se utilizarán los requisitos dispuestos por las leyes y los reglamentos aplicables. Véase Reglamento Conjunto 2023, supra, pág. 40. Asimismo, señala que, cuando el asunto sea ministerial, no se podrá llegar a una determinación utilizando discreción especial, puesto que el juzgador está obligado a utilizar estándares fijos y medidas objetivas. Íd. Igualmente, la sección 2.2.1.3, en su inciso (d), señala que: "se expedirán permisos ministeriales **únicamente** cuando la estructura o uso para lo que se solicite el permiso estén en completa armonía y conformidad con las disposiciones de este Reglamento". (Énfasis nuestro). Íd. Además, se indica de forma categórica que los permisos deben estar en sintonía con los usos específicamente permitidos en cada distrito. Íd. En este sentido el Reglamento Conjunto 2023 enfatiza que los permisos:

[...]siempre deberán cumplir cabalmente con los siguientes parámetros: calificación, usos, altura,

tamaño del solar, densidad, área de ocupación, área bruta de piso, **patios (delantero, laterales y posterior)**, espacios de estacionamientos y área de carga y descarga. (Énfasis nuestro). Íd., a las págs. 40-41.

Sobre los asuntos discrecionales, el Reglamento Conjunto 2023 dispone, en la sección 2.2.2 que,

> a. Los asuntos de naturaleza discrecional serán atendidos por la Junta Adjudicativa, el Secretario Auxiliar de la OGPe o los Municipios Autónomos con Jerarquía de la I a la III.
>
> b. [...]
>
> c. Estos prepararán, emitirán y notificarán la resolución en la cual incluya las determinaciones de hechos y conclusiones de derecho que fundamenten el acuerdo tomado, identificando a las personas que se consideran partes en el procedimiento.
>
> [...]

Por otro lado, el Reglamento Conjunto 2023, en la sección 6.1.7.2, establece que en el Distrito Comercial intermedio ("C-I") está permitido el desarrollo de estaciones de gasolina.

En cuanto a la controversia principal que nos incumbe en esta ocasión, la Ley 161 define en su artículo 1.5, inciso (90), que el término "uso" se refiere "[a]l propósito para el cual una pertenencia fue diseñada, es ocupada, usada o se pretende usar u ocupar". Véase Ley 161-2009 (23 LPRA sec. 9011). Al respecto, el Artículo 9.6 advierte que:

> **[e]n ningún caso se requerirá la expedición de un nuevo permiso, siempre y cuando el uso autorizado, permitido o no conforme legal, continúe siendo de la misma naturaleza y no sea interrumpido por un período mayor de dos (2) años.** [...] En cuanto a usos no residenciales, cuando ocurra un cambio de nombre, dueño o un sucesor, la Oficina de Gerencia de Permisos, Profesional Autorizado o Municipio Autónomo con Jerarquía de la I a la V, según corresponda, lo transferirá a un permiso único de manera automática, una vez presentada la correspondiente solicitud de transferencia de permiso de uso, a nombre del nuevo dueño o sucesor, siempre y cuando el uso autorizado de la propiedad o establecimiento continúe siendo de la misma naturaleza, según se establezca en el Reglamento Conjunto de Permisos. Ley 161-2009 (23 LPRA sec. 9019 e).

Por su parte, el Reglamento Conjunto 2023, en su sección 3.7.3.1, inciso (d), dispone que:

> [s]i el uso por el cual se expide un permiso se descontinuara por dos (2) años o más, el mismo dejará de ser válido **independientemente de que sea un uso permitido o no conforme legal**. Reglamento Conjunto 2023, supra, pág. 205 (énfasis suplido).

Asimismo, este Reglamento consigna, en su sección 8.8, dedicada a las estaciones de gasolina, que en toda aquella solicitud para una nueva estación de gasolina se requerirá: una certificación que constate la notificación de todos los distribuidores, mayoristas, dueños o arrendatarios de estaciones de gasolina que radiquen en el perímetro de la gasolinera para la preparación del estudio de viabilidad, la celebración de una vista previo aprobación del establecimiento y recomendación del Departamento de Desarrollo Económico y Comercio, la preparación de un estudio de viabilidad y cumplir con los requisitos estructurales y de permisos dispuestos en el Reglamento Conjunto 2023. Igualmente, la sección 8.8.1.16 establece que:

> [l]a OGPe y su Junta Adjudicativa, y el Municipio Autónomo con Jerarquía de la I a la III **no** tendrán facultad para conceder variaciones a las disposiciones establecidas en esta Regla 8.8.1 (Disposiciones Generales sobre Estaciones de Gasolina) de este Reglamento.

Por otro lado, el Reglamento Conjunto 2023, en su sección 8.8.1.18, permite que se realicen alteraciones, reconstrucciones, ampliaciones cuando exista una no conformidad legal en la pertenencia siempre que:

> a. **Se demuestre** la no-conformidad legal y **la continuidad en operación de los usos** no conforme existente.
>
> ...

Por su parte, en cuanto a las estaciones de gasolina en el Distrito C-I, el Reglamento, en su sección 8.8.2.1, instruye que estas deberán ser conforme a las Disposiciones Generales de Estaciones

de Gasolinas.  Véase *Reglamento Conjunto 2023, supra*, pág. 604. De igual forma, se indica, en la sección 8.8.2.3, que las estaciones de gasolina en este distrito deben observar los siguientes requisitos: (1) una altura máxima de 6 metros; 2) una cabida mínima de solar de 1,200 metros; 3) un ancho mínimo del solar de 20 metros; 4) un área de ocupación máxima debe ser 60%; 5) los patios, medidos desde las áreas de la despachadoras de gasolina, deberán cumplir con las siguientes distancias: el patio delantero deberá tener un fondo y ancho mínimo de cuatro metros con veinticinco centímetros (4.25) y del patio lateral o posterior no será menor de seis (6) metros, incluyendo la distancia entre la despachadora y el edificio principal. En cuanto a los patios laterales o posteriores, en referencia al edificio principal o accesorios, de fondo o ancho no podrán tener menos de 3 metros de distancia.

## V.

Concluimos que erró la OGPe al emitir el Permiso de Construcción por la vía ministerial.  Ello porque, al haberse interrumpido el uso por más de dos años, por disposición de ley (Artículo 9.6 de la Ley 161), la OGPe tenía que evaluar la solicitud como si tratase de una nueva estación de gasolina.  Según arriba expuesto, este tipo de solicitud no es viable aprobarla por la vía ministerial, pues se requiere la celebración de una vista y que la OGPe ejerza discreción al evaluar la misma.  Más aún, tampoco procedía la vía ministerial en este caso porque del récord surge que la estación propuesta no cumple cabalmente con los parámetros del Reglamento Conjunto.

Contrario a lo planteado por la Proponente, no tiene pertinencia la razón por la cual se haya interrumpido el uso de la gasolinera.  Tampoco podemos aceptar la teoría de que un uso solamente se interrumpe cuando cambia el propósito del negocio. De conformidad con el significado literal y natural de las palabras

usadas en la ley y el Reglamento Conjunto, un uso se interrumpe cuando un negocio deja de operar, de forma que el inmueble no se utiliza para ningún propósito (como ocurrió aquí), por la razón que sea, e indistintamente de si, supuestamente, su propósito eventual podría seguir siendo el mismo.

Adviértase que no existe controversia en cuanto a que la estación de gasolina **lleva sin operar más de diez años** (desde el 1 de abril de 2012). No es hasta el 20 de julio de 2022 que Sulaiman presenta su solicitud de permiso de construcción para reanudar la operación de una estación de gasolina. Por lo cual, hasta ese momento, la estación de gasolina llevaba en desuso por espacio de 10 años.

Al haberse interrumpido el uso[14], era necesario cumplir con los requisitos de la sección 8.8 del Reglamento Conjunto 2023 y seguir el proceso como si se tratara de una nueva estación de gasolina. Entiéndase, era necesario celebrar una vista pública, un estudio de viabilidad y cumplir con los requisitos estructurales dispuestos en el Reglamento Conjunto 2023, entre otros.

Por otro lado, la OGPe, antes de conceder una solicitud de permiso, debe determinar si se evaluará por la vía ministerial o discrecional. De esta forma, será considerado ministerial aquel asunto que no requiera un juicio subjetivo por parte del funcionario. En este ejercicio el funcionario estará encargado únicamente de aplicar los requisitos específicos de las leyes o reglamentos sin discreción especial o juicio para llegar a tal determinación.

El Reglamento Conjunto 2023 detalla que solo se expedirá un permiso de forma ministerial "cuando la estructura o uso para lo

---

[14] No nos persuaden el razonamiento contrario adoptado por otros paneles de este Tribunal. Véase, por ejemplo, *Alverio Service Station, Inc. v. Municipio Autónomo de Caguas*, KLRA202200442 (7 de febrero de 2024). A la misma vez, nuestra decisión hoy es compatible con otras decisiones previas de este Tribunal. Véanse *Iglesia de Dios Pentecostal v. Hernández Ortiz*, Sentencia de 21 de abril de 2021, KLAN202000129; y *Odeth Petroleum v. OGPe*, Sentencia de 28 de junio de 2018, KLRA201700402.

que se solicite el permiso estén en completa armonía y conformidad con las disposiciones de este Reglamento". Véase Reglamento Conjunto 2023, supra, pág. 40. Para que un permiso sea de carácter ministerial, debe cumplir con las especificaciones de cada distrito, por lo cual deberán satisfacer cabalmente con los parámetros de calificación, usos, altura, tamaño del solar, densidad, área de ocupación, área bruta de piso, patios (delantero, laterales y posterior), espacios de estacionamientos y área de carga y descarga.

En este caso, surge del propio Permiso de Construcción que el proyecto propuesto no se ajustaba a los parámetros establecidos para el distrito C-I en lo referente a la extensión de los patios posteriores.[15] Por lo cual, según indica el Reglamento Conjunto 2023, no era posible otorgar este permiso como un asunto ministerial por no cumplirse cabalmente con los parámetros del distrito.[16]

VI.

Por los fundamentos que anteceden, se deja sin efecto el permiso de construcción núm. 2021-394662-PCOC-027533.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[15] La sección 8.8.2.3 establece los parámetros mínimos que deben observar las estaciones de gasolina en el distrito C-1. Señala que el patio posterior en referencia al edificio principal, y aquellos accesorios, no debe de tener menos de 3 metros de fondo o de ancho. Según surge del Permiso de Construcción, el patio posterior mide 1.63 metros, por lo cual la estación de gasolina no cumplía cabalmente con los parámetros del distrito C-I.

[16] Aunque el récord no nos permite pasar juicio al respecto, la Interventora también sostiene que el proyecto propuesto no cumple con otros requisitos reglamentarios. Por ejemplo, plantea que la estación de gasolina no cumple con los siguientes requerimientos del Reglamento Conjunto 2023: distancias entre estaciones de gasolina (sección 8.8.1.5); evaluación de necesidad y conveniencia respecto a los negocios similares que se ubican en un radio de 1600 metros de la estación propuesta(sección 8.8.1.4); la separación respecto a otros usos (sección 8.8.1.6); y la construcción de verja de hormigón armado y bloques de hormigón de dos metros de alto cuando el solar propuesto colinde con un distrito residencial (sección 8.8.1.8). De igual forma, alega que la estación de gasolina incumple con los parámetros del distrito C-I referentes a la cabida del solar y distancia de las despachadoras en referencia al edificio principal. Estos asuntos tendrían que ser evaluados por la OGPe a través del proceso discrecional correspondiente, luego de celebrada la correspondiente vista, y a través de una determinación que incluya determinaciones de hecho y de derecho.